# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

CHARLES ANDREW WILLIAMS,

Petitioner,

vs.

STUART J. RYAN, Warden,

Respondent.

Civil No.   05cv0737-WQH (WMc)

**ORDER:**

**(1)  DENYING MOTION FOR AN EVIDENTIARY HEARING;**

**(2)  DENYING FIRST AMENDED PETITION FOR A WRIT OF HABEAS CORPUS; AND**

**(3)  ISSUING A CERTIFICATE OF APPEALABILITY**

## I.

## INTRODUCTION

Charles Andrew Williams (hereinafter "Petitioner"), is a California prisoner proceeding by and through counsel with a First Amended Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254.  (Doc. No. 69.)  Petitioner was fifteen years old on March 5, 2001, when he brought a handgun to the school he attended, Santana High School in Santee, California, and shot fifteen people, killing two and wounding thirteen.  He challenges here his San Diego County Superior Court convictions of two counts of premeditated murder and thirteen counts of attempted premeditated murder, entered as a result of a guilty plea, and his sentence of 50 years-to-life in state prison.  (First Amended Petition ["FAP"] at 1-2.)  He claims that his rights

under the Sixth, Eighth and Fourteenth Amendments to the United States Constitution were violated because his sentence amounts to cruel and unusual punishment, and because he was denied the effective assistance of counsel at the pre-trial plea stage, at sentencing, and on appeal. (Id. at 6-9.)  Petitioner has also filed a Motion for an Evidentiary Hearing which includes a request to conduct discovery, and which is accompanied by Petitioner's declaration setting forth details regarding the advice he received from counsel in connection to his guilty plea which were not presented to the state court.  (Doc. No. 95.)

Warden Stuart J. Ryan (hereinafter "Respondent"), has filed an Answer to the First Amended Petition, accompanied by a Memorandum of Points and Authorities in support thereof, and has lodged portions of the state court record.  (Doc. Nos. 16, 58, 74, 78.)  Respondent contends habeas relief is unavailable because the adjudication of Petitioner's claims by the state court was neither contrary to, nor involved an unreasonable application of, clearly established federal law.  (Memorandum of Points and Authorities in Support of Answer ["Ans. Mem."] at 1, 11-46.)  Respondent opposes Petitioner's evidentiary hearing motion, arguing that this Court is precluded from holding a hearing because Petitioner failed to develop the facts supporting his claims in state court, and because he has not stated a colorable claim.  (Doc. No. 98.)  Petitioner has filed a Traverse which contains allegations not presented in the First Amended Petition. (Doc. No. 87.)

**II.**

**STATE PROCEEDINGS**

In a 28-count Information filed in the San Diego County Superior Court on March 7, 2001, Petitioner was charged with two counts of murder in violation of Cal. Penal Code sections 187(a) and 189; thirteen counts of attempted premeditated murder in violation of Cal. Penal Code sections 187(a), 189 and 664; and thirteen counts of assault with a firearm in violation of Cal. Penal Code section 245(a)(2).  (Lodgment No. 1, Clerk's Tr. ["CT"] at 1-23.)  Special circumstance allegations of lying in wait pursuant to Cal. Penal Code section 190.2(a)(15) and multiple murders pursuant to Cal. Penal Code section 190.2(a)(3) were included.  (CT 6-7.) Another special circumstance allegation (referred to hereinafter as the "Prop 21 allegation"),

alleged that Petitioner was 14 years of age or older at the time of the crimes and personally killed the victims within the meaning of Cal. Welfare and Institutions Code section 602(b).[1]  (Id.)

The Information contained sentence enhancement allegations that Petitioner personally used a handgun, personally discharged a handgun, and personally inflicted great bodily injury during the commission of all twenty-eight counts, in violation of Cal. Penal Code sections 12022.5(a)(1), 12022.7(a) and 12022.53(c-d). (CT 6-22.)  With respect to the thirteen attempted murder counts, the Information alleged that at the time of the crimes Petitioner was 14 years of age or older within the meaning of Cal. Welfare and Institutions Code section 707(d)(2), which allows for discretionary filing of those charges in adult court.  (CT 7-16.)

Petitioner's appointed trial counsel filed a demurrer contending that the Prop 21 allegation violated the single subject rule and separation of powers doctrine contained in the state constitution, as well as the prohibition on cruel and unusual punishment contained in the state and federal constitutions.  (CT 89-111.)  The trial court overruled the demurrer in an order filed on April 27, 2001.  (CT 434-50.)  On November 28, 2001, a panel of the state appellate court, over the dissent of one justice, denied an interlocutory petition for a writ of prohibition challenging the denial of the demurrer.  (CT 477-511.)  The appellate court's decision became final when a remitttitur issued on May 23, 2002, following the decision of the California Supreme Court in Manduley v. Superior Court, 27 Cal.4th 537 (Feb. 28, 2002), which upheld the constitutionality of Proposition 21.  (CT 476.)

A readiness conference was held on June 20, 2002, at which the parties informed the court that the information was to be amended and that Petitioner intended to enter a guilty plea to the murder counts (one and two) and the attempted murder counts (three through fifteen), without a plea agreement but with the understanding that the assault counts (sixteen through twenty eight) would necessarily be dismissed as lesser included offenses of the attempted murder counts.  (Lodgment No. 2, Reporter's Tr. ["RT"] at 1-3.)  The Information was amended to add

---

[1] California Welfare and Institutions Code section 602(b) was enacted as a result of Proposition 21, approved by California voters on March 7, 2000.  It provides for mandatory filing of murder charges in adult court for minors over the age of 14 who personally kill their victims and where one of the special circumstances enumerated in California Penal Code section 190.2(a) is alleged.

allegations that the murders were willful, premeditated and deliberate, and to strike the lying in wait special circumstance allegation.  (CT 1, 6-7; RT 1-2)  The court informed Petitioner that the maximum sentence he faced was 425 years-to-life in state prison and the minimum sentence was 50 years-to-life in state prison.  (RT 4-6.)  The trial judge indicated that based on the Manduley decision, commitment to the youth authority was not an option, although Petitioner would not be housed with adults prior to his eighteenth birthday.  (RT 4-6.)  Petitioner's counsel represented that Petitioner intended to plead guilty in order to avoid causing "any further pain to the victims, their families, or his own family."  (RT 6.)  Petitioner was placed under oath, was advised of and waived his constitutional rights, and signed and initialed a change of plea form acknowledging the waiver of those rights.  (RT 7-12; CT 512-14.)  He entered an unconditional plea of guilty to the first fifteen counts, admitted the special circumstance and sentence enhancement allegations with respect to those counts, and stipulated that the police reports would provide a factual basis for the plea along with his statement that: "At age fifteen, I brought a gun to school and intentionally shot fifteen people, killing two, and causing great bodily injury to thirteen others.  I did so, willfully, deliberately and with premeditation."  (RT 13-18.)  The remaining thirteen counts of assault with a firearm, along with the associated sentence enhancement allegations, were dismissed as lesser included offenses.  (RT 19-20.)

Petitioner's counsel filed a sentencing memorandum on August 9, 2002, requesting dismissal or striking of the Prop 21 allegation in order to have Petitioner remanded to the juvenile court for sentencing, or in the alternative, the imposition of a sentence of 35 years-to-life in order to provide for a realistic chance of release on parole.  (CT 518-40.)  The sentencing memorandum also requested a judicial determination that a 50 years-to-life sentence would violate the state and federal prohibitions against cruel and unusual punishment because Petitioner would not be eligible for parole prior to turning 66 years old, and it would in effect amount to a sentence of life without parole.  (Id.)

A lengthy sentencing hearing was held on August 15, 2002.  (RT 22-128.)  The trial judge declined to strike the Prop 21 allegation, noting that remanding Petitioner to juvenile court would result in his being released from custody by the age of 25, which the judge found to be

1   an insufficient period of incarceration given the nature of the crimes. (RT 118-21.) With respect

2   to the murder counts, Petitioner was sentenced to two concurrent state prison terms of 25 years-

3   to-life, consecutive to two concurrent 25 years-to-life terms for the firearm use enhancements,

4   for a total of 50 years-to-life. (RT 127; CT 1311.) He received 13 concurrent indeterminate life

5   sentences for the attempted murder counts, and 13 concurrent 25 years-to-life terms for the

6   firearm use enhancements as to those counts. (CT 1311-14, 1319-22.) An additional 39-year

7   term arising from the great bodily injury enhancements was stayed. (CT 1321-22.)

8       Petitioner appealed his conviction and sentence, arguing that: (1) the trial judge violated

9   state law by deciding not to remand the case to the juvenile court without ordering a fitness study

10  to be prepared; (2) the Prop 21 allegation was required to have been stricken as a matter of state

11  law; (3) the trial judge abused his discretion in refusing to strike the Prop 21 allegation; and

12  (4) the sentence violated state and federal constitutional prohibitions against cruel and unusual

13  punishment. (Lodgment No. 3.) The appellate court affirmed in all respects in an unpublished

14  opinion. (Lodgment No. 5, People v. Williams, No. D040917 (Cal.Ct.App. Jan. 30, 2004).) A

15  petition for rehearing was summarily denied by the appellate court. (Lodgment Nos. 6-7.)

16  Petitioner filed a petition for review in the state supreme court presenting only the second claim

17  raised in the appellate court, based solely on state law. (Lodgment No. 8.) That petition was

18  denied by an order which stated in full: "Petition for review DENIED." (Lodgment No. 9,

19  People v. Williams, No. S123169 (Cal. April 14, 2004).)

20      On February 16, 2005, more than two and one-half years after entering his plea, Petitioner

21  filed a pro se motion to vacate his sentence in the trial court, raising some but not all of the

22  claims presented in the First Amended Petition here. (Lodgment No. 10.) He claimed that his

23  plea was not knowing and intelligent due to his age and immaturity, that he would have pled not

24  guilty by reason of insanity if not for the ineffective assistance of his appointed counsel and the

25  lack of diligence by the trial judge and prosecutor, and that those issues were not raised on

26  appeal due to the deficiencies of his appointed appellate counsel. (Id. at 1-4.) The trial court

27  denied the motion as untimely without reaching the merits of the claims. (Lodgment No. 11,

28  People v. Williams, No. SCE211823 (Cal.Sup.Ct. Mar. 14, 2005).)

Petitioner filed a pro se petition for a writ of coram vobis in the state appellate court on March 22, 2005, raising the same claims. (Lodgment No. 12.) Petitioner added an argument that the recent Supreme Court opinion in Roper v. Simmons, 543 U.S. 551 (2005) (holding that the Eighth and Fourteenth Amendments forbid imposition of the death penalty for offenders who were under the age of 18 when their crimes were committed), supported his claims because an amicus curiae brief filed in that case contained expert findings that "intellectual maturity, the age of reason, does not arrive until age 25."[2]  (Lodgment No. 12 at 1-2.)  That petition was summarily denied without a statement of reasoning or citation of authority. (Lodgment No. 13.) A petition for review filed in the state supreme court was summarily denied on June 22, 2005, without a statement of reasoning or citation of authority.  (Lodgment Nos. 14-15.)

While the state supreme court petition for review was pending, Petitioner initiated this action by filing a pro se federal Petition on April 11, 2005.  (Doc. No. 1.)  On May 16, 2007, after Petitioner retained counsel, the Court issued a stay to allow exhaustion of available state court remedies. (Doc. No. 44.)  On August 31, 2007, Petitioner's counsel filed a habeas petition in the California Supreme Court.  (Lodgment No. 16.)  That petition was denied with an order which stated: "The petition for writ of habeas corpus is denied. [¶] Moreno, J., was absent and did not participate." (Lodgment No. 17, In re Williams, No. S156005 (Cal. Mar. 12, 2008).) Counsel thereafter filed the First Amended Petition in this Court.  (Doc. No. 69.)

### III.

### UNDERLYING FACTS

The following statement of facts is taken from the appellate court opinion affirming Petitioner's convictions on direct review.  This Court gives deference to state court findings of fact and presumes them to be correct.  See Sumner v. Mata, 449 U.S. 539, 545-47 (1981).

> In early March 2001, appellant, a 15-year-old student at Santana High School in Santee, began thinking about taking a gun to school and shooting people.  On March 5, 2001, he went to school armed with a .22 caliber revolver

---

[2] The Roper case did not alter California law.  As the appellate court here noted, at the time of Petitioner's offenses state law provided that because of his age Petitioner could not received the death penalty or be sentenced to life imprisonment without parole. (Lodgment No. 5, People v. Williams, No. D040917, slip op. at 8.)

and 40 rounds of ammunition. At approximately 9:20 a.m. he entered a restroom stall and loaded the gun. He emerged and shot two students and a teacher who were in the restroom. He walked out of the restroom and began shooting randomly at school staff and students. He re-entered the restroom four times to reload. Before he was confronted by police officers and surrendered, he had shot 15 persons. Two of them died. When questioned, appellant stated he shot the people because he was "mad at everything." Appellant stated: "I didn't want anybody to die, but if they did, then oh well."

(Lodgment No. 5, People v. Williams, No. D040917, slip op. at 2.)

## IV.

## PETITIONER'S CLAIMS

(1) Petitioner was denied the effective assistance of counsel in violation of the Sixth and Fourteenth Amendments because his appointed appellate counsel failed to: (a) speak to or communicate with Petitioner prior to preparing and filing the appellate brief; (b) raise the issue of ineffective assistance of trial counsel or file a state habeas petition; (c) raise the issue of Petitioner's mental state; and (d) raise the issue of trial counsel's failure to have Petitioner plead not guilty by reason of insanity. (FAP at 6.)

(2) Petitioner was denied the effective assistance of counsel in violation of the Sixth and Fourteenth Amendments because his appointed trial counsel: (a) permitted entry of a guilty plea prior to a psychiatric examination; (b) failed to file a motion to suppress statements made during a police interrogation conducted without the presence of counsel or Petitioner's parents; (c) failed to have an MRI examined by experts to determine if Petitioner had diminished brain capacity and development; and (d) allowed the entry of a guilty plea from a person who could not have entered into a binding contract due to his age and immaturity. (FAP at 7.)

(3) Petitioner was denied the effective assistance of counsel in violation of the Sixth and Fourteenth Amendments because his appointed trial counsel failed "to explore and present Petitioner with all options regarding defenses, including diminished capacity, insanity and others prior to inducing Petitioner to enter a guilty plea," in that: (a) Petitioner had an underdeveloped mental capacity; (b) trial counsel failed to thoroughly investigate his mental maturity and the limitations on his ability to exercise reasoned judgment and control his impulses due to his youth, including how that may have provided defenses based on insanity, diminished capacity

and/or lack of intent; and (c) trial counsel improperly advised him to plead guilty despite his lack of understanding of the consequences of the plea and the waiver of constitutional rights due to his youth and physical immaturity.  (FAP at 8.)

(4)  Petitioner's sentence violates the Eighth Amendment's prohibition on cruel and unusual punishment because Petitioner's culpability was mitigated by his age and immaturity, and was imposed as a result of counsel's failure to consider expert evidence.  (FAP at 9.)

## V.

## DISCUSSION

For the following reasons the Court finds that habeas relief is not available with respect to the claims which were adjudicated on the merits by the state court because an independent review of the record reveals that the adjudication was neither contrary to, nor involved an unreasonable application of, clearly established federal law.  With respect to the remaining claims, which were denied by the state court on procedural grounds without reaching the merits, Petitioner is not entitled to relief because, based on a de novo review, he has not established constitutionally ineffective assistance of counsel.  The Court also denies Petitioner's Motion for an evidentiary hearing and his related request for discovery because the Court is precluded from conducting an evidentiary hearing or allowing discovery due to Petitioner's failure to develop facts supporting his claims in the state court, and, alternately, because neither discovery nor an evidentiary hearing is needed to resolve any of the claims presented.

**A.**     **Standard of Review.**

Title 28, United States Code, § 2254(a), sets forth the following scope of review:

> The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in <u>violation of the Constitution or laws or treaties of the United States</u>.

28 U.S.C.A. § 2254(a) (West 2006) (emphasis added).

As discussed in detail below, there are two categories of claims presented in the First Amended Petition.  These include claims which were adjudicated on the merits by the state court and claims which the state court declined to consider on the merits because they were untimely.

With respect to the claims which were adjudicated on their merits, Title 28, United States Code, § 2254(a), as amended by the Anti-terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214, provides that:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C.A. § 2254(d) (West 2006).

A state court's decision may be "contrary to" clearly established Supreme Court precedent: (1) "if the state court applies a rule that contradicts the governing law set forth in [the Court's] cases" or (2) "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the] Court and nevertheless arrives at a result different from [the Court's] precedent." Williams v. Taylor, 529 U.S. 362, 405-06 (2000). A state court decision may involve an "unreasonable application" of clearly established federal law, "if the state court identifies the correct governing legal rule from this Court's cases but unreasonably applies it to the facts of the particular state prisoner's case." Id. at 407. An unreasonable application may also be found, "if the state court either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." Id.

"[A] federal habeas court may not issue the writ simply because the court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. . . . Rather, that application must be objectively unreasonable." Lockyer v. Andrade, 538 U.S. 63, 75-76 (2003) (internal quotation marks and citations omitted). Clearly established federal law "refers to the holdings, as opposed to the dicta, of [the United States Supreme] Court's decisions." Taylor, 529 U.S. at 412. Habeas relief is also available if

1  the state court's adjudication of a claim "resulted in a decision that was based on an

2  unreasonable determination of the facts in light of the evidence presented in state court."  28

3  U.S.C.A. § 2254(d)(2) (West 2006).   In order to satisfy this provision, Petitioner must

4  demonstrate that the factual findings upon which the state court's adjudication of his claims rest,

5  assuming it rests on a factual determination, are objectively unreasonable.  Miller-El v. Cockrell,

6  537 U.S. 322, 340 (2003).

7       The second category of claims presented here are those that were not addressed on the

8  merits by the state court because they were rejected on procedural grounds as untimely.  Because

9  these claims were not adjudicated on the merits in the state court, AEDPA deference does not

10  apply and the Court must conduct a de novo review of those claims.[3]  Killian v. Poole, 282 F.3d

11  1204, 1208 (9th Cir. 2002).  Although AEDPA deference does not apply to these claims, the

12  Court must remain mindful that "judgments of conviction and sentence carry a presumption of

13  finality and legality and may be set aside only when a state prisoner carries his burden of proving

14  that [his] detention violates the fundamental liberties of the person, safeguarded against state

15  action by the Federal Constitution."   Hayes v. Brown, 399 F.3d 972, 978 (9th Cir. 2005) (en

16  banc).

17  **B.     Claim Two**

18       The Court will begin its analysis with the allegations of ineffective assistance of trial

19  counsel presented in claims two and three, as these claims inform the disposition of the claims

20  of ineffective assistance of appellate counsel presented in claim one.  Petitioner contends in

21  claim two that he was denied the effective assistance of counsel in violation of the Sixth and

22  _____

23     [3] Such claims are likely procedurally defaulted in this Court, ordinarily requiring Petitioner to
demonstrate, prior to the Court addressing the merits of the claims, cause and prejudice to overcome the

24  default or that a fundamental miscarriage of justice would result from the Court's refusal to address the
merits of the claims.  See Coleman v. Thompson, 501 U.S. 722, 752 (1991).  However, Respondent has

25  waived the affirmative defense of procedural default by failing to raise it in the Answer.  Morrison v.
Mahoney, 399 F.3d 1042, 1046-47 (9th Cir. 2005).  Petitioner could show cause to excuse a default by

26  establishing constitutionally ineffective assistance of counsel in failing to raise the claims on appeal,
as he has alleged in claim one.  See Murray v. Carrier, 477 U.S. 478, 488 (1986).  As set forth below,

27  however, Petitioner has not established constitutionally ineffective assistance of appellate counsel as
a result of failing to raise the claims on appeal.  Nor has Petitioner identified any other basis for finding

28  cause to excuse a default.  Thus, whether the claims are procedurally defaulted or considered on their
merits does not affect the outcome of this action.

05cv0737

Fourteenth Amendments because his appointed trial counsel: (1) permitted entry of a guilty plea prior to a psychiatric examination; (2) failed to file a motion to suppress statements made by Petitioner during a police interrogation conducted outside the presence of counsel or his parents; (3) failed to have an MRI examined by experts to determine if Petitioner had diminished brain capacity and development; and (4) allowed the entry of a guilty plea from a person who could not have entered into a binding contract due to his age and immaturity.  (FAP at 7.)

Respondent replies that claim two should be denied as vague and speculative in that Petitioner has failed to provide any supporting facts for this claim, including whether and to what extent he was advised by counsel in connection to his plea, whether and to what extent his parents were contacted prior to the interrogation or made any attempt to participate, and where, when or by whom the MRI was performed, whether it was available to counsel and what it revealed about his brain development.  (Ans. Mem. at 22-32.)  Respondent contends that this claim relies on speculation that the guilty plea was based on advice of counsel or somehow induced by counsel, when in fact the record discloses that Petitioner pled guilty without a plea agreement in order to take responsibility for his actions and to bring closure to the events.  (Id. at 32.)  Respondent also argues that even to the extent the claim should be addressed on its merits, the adjudication of the claim by the state court was neither contrary to, nor involved an unreasonable application of, clearly established federal law, because Petitioner is unable to demonstrate that the performance of counsel was deficient or that he was prejudiced by the alleged mistakes of counsel as required by controlling federal authority.  (Id. at 23-34.)  As discussed in detail below, Petitioner replies to Respondent's contention regarding the lack of supporting facts by submitting his own declaration in support of the Motion for an Evidentiary Hearing, in which he sets forth, at least in part, the advice he received from counsel regarding the plea.  (Evid. Hr'g Mot., Ex. A, Pet.'s Decl. at ¶ 4.)

Petitioner presented the second and third aspects of claim two, absent his declaration, to the state supreme court in a habeas petition.  (Lodgment No. 16 at 19, 23.)  The state supreme court denied the petition without citation of authority or a statement of reasoning.  (Lodgment No. 17.)  Such a silent denial is ordinarily considered to be a decision on the merits of the claims.

Hunter v. Aispuro, 982 F.2d 344, 347-48 (9th Cir. 1992).  There is an overriding presumption, however, that a silent denial adopts the reasoning of the last reasoned state court decision, even if the last state court decision relied on or imposed a procedural bar.  Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991) ("[W]here, as here, the last reasoned opinion on the claim explicitly imposes a procedural default, we will presume that a later decision rejecting the claim did not silently disregard that bar and consider the merits.")

Petitioner presented a claim of ineffective assistance of trial counsel to the state appellate court in his petition for writ of coram vobis, alleging that his trial counsel: (1) allowed entry of a guilty plea prior to a full psychiatric examination; (2) failed to move to suppress a transcribed interrogation; (3) failed to obtain parental approval prior to entry of the guilty plea from a minor who lacked legal standing to enter a binding contract; and (4) improperly limited the appeal by the manner in which counsel filled out the appeal form.  (Lodgment No. 12.)  Petitioner argued that the recent opinion in Roper v. Simmons, and in particular an amicus curiae brief filed by the American Medical Association ("AMA") in that case which identifies expert opinions related to adolescent brain development as it relates to criminal culpability, supported his claim that Petitioner's mental capacity and its relation to his culpability had been overlooked by his counsel, the trial judge and the prosecutor.  (Id. at 1-5.)  That petition was summarily denied without a statement of reasoning.  (Lodgment No. 13 at 1-4.)  Petitioner presented the same claims to the trial court in a motion to vacate his sentence, absent any citation to Roper or its amicus brief, and his motion was denied as untimely.  (Lodgment Nos. 10-11.)  Thus, subparts one, two and four of claim two (absent the allegations regarding Roper and Petitioner's declaration) were raised in the trial court, denied on procedural grounds, and silently denied by the state appellate and supreme courts, whereas the third aspect of claim two (absent Petitioner's declaration) was raised only in the state supreme court and silently denied.

With respect to the first, second and fourth subparts of claim two which do not rely on Petitioner's declaration or the Roper materials, the Court will look through the silent denial by the state supreme court to the last reasoned state court decision which addressed those aspects of the claims, the trial court's order denying them as untimely.  Therefore, as to these aspects of

those subparts of claim two, the Court will conduct a de novo review in order to determine whether Petitioner received constitutionally ineffective assistance of counsel. Killian, 282 F.3d at 1208. With respect to the third subpart of claim two, as well as those aspects of subparts one, two and four which rely on Petitioner's declaration or the Roper materials, there is no decision by any state court which articulates its reasoning for denying the claims. As such, this Court must conduct an independent review of the record to determine whether the silent denial of those aspects of claim two by the state supreme court was contrary to, or involved an unreasonable application of, clearly established federal law. See Pirtle v. Morgan, 313 F.3d 1160, 1167 (9th Cir. 2002) (holding that when the state court reaches the merits of a claim but provides no reasoning to support its conclusion, "although we independently review the record, we still defer to the state court's ultimate decision."); Greene v. Lambert, 288 F.3d 1081, 1089 (9th Cir. 2002) ("(W)hile we are not required to defer to a state court's decision when that court gives us nothing to defer to, we must still focus primarily on Supreme Court cases in deciding whether the state court's resolution of the case constituted an unreasonable application of clearly established federal law.") [4]

---

[4] Although Petitioner's declaration was not presented to the state supreme court, it does not render any claims which rely upon it unexhausted. The exhaustion requirement is satisfied, "if it is clear that (the habeas petitioner's) claims are now procedurally barred under (state) law." Gray v. Netherland, 518 U.S. 152, 161 (1996), quoting Castille v. Peoples, 489 U.S. 346, 351 (1989); Engle v. Isaac, 456 U.S. 107, 125-26 n.28 (1982) (noting that the exhaustion requirement applies "only to remedies still available at the time of the federal petition."); Valerio v. Crawford, 306 F.3d 742, 770 (9th Cir. 2002) (same), citing Phillips v. Woodford, 267 F.3d 966, 974 (9th Cir. 2001) ("the district court correctly concluded that [the] claims were nonetheless exhausted because 'a return to state court for exhaustion would be futile.'"). "A habeas petitioner who has defaulted his federal claims in state court meets the technical requirements for exhaustion; there are no state remedies any longer 'available' to him." Cassett v. Stewart, 406 F.3d 614, 621 n.5 (9th Cir. 2005) (quoting Coleman v. Thompson, 501 U.S. 722, 732 (1991)). It appears clear that Petitioner has satisfied the technical requirements of exhaustion with respect to any aspect of claim two not presented to the state courts because he no longer has state court remedies available. Any attempt by Petitioner to return to state court at this time in order to seek further post-conviction relief based on the allegations contained in his declaration would certainly meet with the imposition of a procedural bar. See In re Robbins, 18 Cal.4th 770, 788 n.9 (1998) (In re Clark "serves to notify habeas corpus litigants that we shall apply the successiveness rule when we are faced with a petitioner whose prior petition was filed after the date of finality of Clark."), see also In re Clark, 5 Cal.4th 750, 797-98 (1993) ("the general rule is still that, absent justification for the failure to present all known claims in a single, timely petition for writ of habeas corpus, successive and/or untimely petitions will be summarily denied," and describing the "fundamental miscarriage of justice" exception to that rule). In any case, as discussed throughout this Order, the aspects of Petitioner's claims which rely on his declaration are without merit, and the exhaustion requirement is generally inapplicable to such claims. Acosta-Huerta v. Estelle, 7 F.3d 139, 142 (9th Cir. 1982).

For ineffective assistance of counsel to provide a basis for habeas relief, Petitioner must first show that counsel's performance was deficient. <u>Strickland v. Washington</u>, 466 U.S. 668, 687 (1984). "This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." <u>Id.</u> "The reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions." <u>Id.</u> at 691. A defendant's intention to plead guilty can mitigate, although not eliminate, an attorney's duty to reasonably investigate. <u>See</u> <u>Langford v. Day</u>, 110 F.3d 1380, 1386-88 (9th Cir. 1996).

Petitioner must also demonstrate that counsel's deficient performance prejudiced the defense. <u>Strickland</u>, 466 U.S. at 687. In the context of a guilty plea, prejudice requires a showing that "there is a reasonable probability that, but for counsel's errors, [Petitioner] would not have pleaded guilty and would have insisted on going to trial." <u>Hill v. Lockhart</u>, 474 U.S. 52, 59 (1985). A reasonable probability in this context is "a probability sufficient to undermine confidence in the outcome." <u>Strickland</u>, 466 U.S. at 694.

**1) Entry of a guilty plea prior to a psychiatric examination**

Petitioner first contends that he received ineffective assistance of counsel because he was permitted to enter a guilty plea prior to a psychiatric examination, which he alleges denied him "a possible plea of not guilty by reason of insanity and/or lack of adult culpability due to age and undeveloped mental status." (FAP at 7.) Respondent argues that trial counsel's performance was not deficient because, assuming the plea was entered based on advice of counsel, counsel was fully aware of the facts and circumstances of the crimes, including the status of Petitioner's mental health, his age and immaturity, and Petitioner expressed a desire to accept responsibility for his actions and prevent further trauma to the victims, a factor counsel used, along with Petitioner's age and immaturity, to procure the lowest possible sentence. (Ans. Mem. at 24.) Respondent contends that Petitioner has failed to allege a single fact which was known or should have been known to counsel prior to entry of the guilty plea which would have led a reasonable attorney to believe a psychiatric examination may have revealed that Petitioner possessed a diminished capacity defense or was eligible to be handled by the juvenile court system. (<u>Id.</u>)

Petitioner admits that his trial counsel had him examined by a psychiatrist, who diagnosed him as suffering from "Major Depressive Disorder, recurrent, severe without psychotic features, Cannabis Dependence and Attention Deficit Hyperactivity Disorder not otherwise specific." (Traverse at 18-19.)  Although not alleged in the First Amended Petition, he contends in his Traverse, as he did in the state court, that "[t]here was no psychiatric examination for the express purpose of assessing diminished capacity and/or insanity prior to the plea and that is the basis of the ineffective assistance of counsel as it relates to these defenses." (Id. at 19.)

The claim in the First Amended Petition that trial counsel allowed Petitioner to enter a guilty plea without first obtaining a psychiatric examination is without merit on its face because Petitioner admits that trial counsel arranged for just such an examination.  The Probation Officer's Report indicates that Dr. Charles Scott, a psychiatrist and medical doctor employed as the Clinical Director of Psychiatry at the University of California-Davis, evaluated Petitioner at the request of defense counsel. (CT 1195.)  A copy of Dr. Scott's lengthy and detailed written evaluation is attached to the sentencing memorandum filed by Petitioner's counsel, and begins by stating:

> At the request of his attorneys, I conducted a psychiatric evaluation of Andrew Williams to determine the presence, if any, of a psychiatric disorder. In addition, I was asked to evaluate why Andy shot and killed two students and injured 13 other individuals at Santana High School on March 5, 2001. I also reviewed Andy's insight and understanding regarding his actions on March 5, 2001, his empathy towards the victims and their families, as well as his risk of future dangerousness and potential psychiatric treatment needs.

(CT 685-752.)

The report states that Dr. Scott spent more than fourteen hours personally interviewing Petitioner during four meetings in March and August of 2001, well before Petitioner's June 20, 2002, guilty plea. (CT 716.)  Dr. Scott diagnosed Petitioner as suffering from depression, cannibis dependence and attention deficit disorder, but "without psychotic features." (CT 708.) Thus, Petitioner's contention that he was permitted to enter a guilty plea prior to a psychiatric examination is entirely without merit.

Petitioner indicates in his Traverse that Dr. Scott's report contains statements by Petitioner that he felt like he was "going through the motions" and experienced the event "as if

he was watching it from afar." (Traverse at 19.)  He contends that Dr. Scott's diagnosis of depression, coupled with these "descriptions of classic dissociation," should have alerted Petitioner's counsel to obtain another "psychiatric examination for the expressed purpose of assessing diminished capacity and/or insanity prior to the plea." (Id.)  To the extent Petitioner is presenting a new claim in the Traverse which was not presented in the First Amended Petition, the Court has the discretion to consider it or refuse to consider it because Petitioner was specifically warned in this Court's February 26, 2009, Order directing a response to the First Amended Petition [Doc. No. 71] that his Traverse "shall not raise new grounds for relief that were not asserted" in the First Amended Petition. See Cacoperdo v. Demosthenes, 37 F.3d 504, 507 (9th Cir. 1994) (stating that court may ignore issue raised for first time in traverse when scope of traverse has been specifically limited by court order and petitioner ignores order to file a separate pleading indicating intent to raise claim); but see Boardman v. Estelle, 957 F.2d 1523, 1525 (9th Cir. 1992) (holding that district court erred in failing to address issue raised in traverse).  The Court will exercise its discretion to consider this aspect of claim two because allegations that Petitioner was not adequately diagnosed prior to entering his guilty plea are intertwined with, and inform the resolution of, his other claims.

Petitioner has failed to show that Dr. Scott's psychiatric examination was conducted for some purpose other than identifying possible mental health defenses, or that his diagnosis was not accurate or complete.  Neither has Petitioner shown that it was in any manner unreasonable for counsel to rely on Dr. Scott's diagnosis.  As discussed below, Petitioner's reliance on the Supreme Court's decision in Roper and the materials submitted by the AMA as amicus in support of that case does not establish that further psychiatric testing was necessary, does not provide evidence that Petitioner had any viable mental health defenses available to him, and does not in any manner call into question Dr. Scott's diagnosis that Petitioner was free from psychosis.  Thus, Petitioner has not shown that counsel acted unreasonably in failing to procure a second opinion.  Moreover, the record clearly indicates that Petitioner wished to plead guilty in order to avoid causing "any further pain to the victims, their families, or his own family." (RT 6.)  Petitioner's stated desire to plead guilty mitigated counsel's duty to procure further

psychiatric opinions, to the extent such a duty existed. <u>Langford</u>, 110 F.3d at 1386-88. Thus, Petitioner has not established deficient performance in this regard.

Neither has Petitioner provided any factual basis for establishing prejudice from counsel's failure to insist on further psychiatric testing. Petitioner merely speculates that further testing might have provided a basis for a diminished capacity defense, or a basis for him to be sentenced in juvenile court. (FAP at 7.) Speculative and conclusory allegations are insufficient to prove that counsel provided ineffective assistance. <u>Blackledge v. Allison</u>, 431 U.S. 63, 74 (1977); <u>James v. Borg</u>, 24 F.3d 20, 26 (9th Cir. 1994). As discussed below, Petitioner has failed to establish that a plea of not guilty by reason of insanity, or any type of diminished capacity defense, was a viable option for him. In addition, the trial judge was clear in his reasons for refusing to allow Petitioner to be sentenced in juvenile court, indicating that an abbreviated sentence would not be proportional to the crimes, and that he was in any case precluded from doing so by controlling California Supreme Court authority. (RT 4-6, 118-21.) The trial judge was provided with a lengthy sentencing memorandum by Petitioner's counsel which included Dr. Scott's report containing the psychiatric examination results, as well as detailed information regarding Petitioner's personal history, along with a request to have Petitioner sentenced in juvenile court. (CT 518-76.) As the appellate court noted, however, as long as any of Petitioner's convictions or firearm use findings were left in place he was not eligible for commitment to the California Youth Authority. (Lodgment No. 5, <u>People v. Williams</u>, No. D040917, slip op. at 17-18.) Thus, Petitioner has not demonstrated that there is a reasonable probability that he would not have pled guilty and would have insisted on going to trial but for counsel's failure to procure an additional psychiatric evaluation. <u>Hill</u>, 474 U.S. at 59. Based on a de novo review, it is clear that Petitioner has not shown he received constitutionally ineffective assistance of counsel in this regard, as he has demonstrated neither deficient performance nor prejudice. <u>Id.</u>; <u>Strickland</u>, 466 U.S. at 687, 691.

**2) Failure to move to suppress interrogation**

Petitioner next contends that his trial counsel was ineffective for failing to move to suppress statements Petitioner made to the police during an interrogation conducted without the

presence of counsel or his parents. (FAP at 7.) Respondent argues that Petitioner has failed to provide a factual basis for this claim in that he does not allege whether his counsel or parents were contacted prior to the interrogation, whether he was given the choice of having them present, or whether they made any effort to be present. (Ans. Mem. at 26.) Respondent also contends that counsel reasonably determined that a suppression motion would fail and that no prejudice resulted from not filing the motion. (Id. at 26-27.)

Petitioner replies that a motion to suppress might have been successful, that the statement contained devastating evidence against him and was one of the reasons he pled guilty, and that if the statement had been suppressed he might not have pled guilty or might have been offered a more favorable plea. (Traverse at 15-16.) In his declaration attached to the Motion for an Evidentiary Hearing, Petitioner states that Ron Bobo, one of the two Deputy Public Defenders appointed to represent him, "told me he could get my statement to the police excluded from evidence because my father was not present. However, neither he nor Mr. [Randy] Mize brought a motion to exclude it." (Evid. Hr'g Mot., Ex. A, Pet.'s Decl. ¶ 5.)

The record contains a copy of the transcript of Petitioner's police interrogation, which was conducted a few hours after the shooting. (CT 847-97.) Petitioner was twice informed, prior to the beginning of questioning, that he had the right to remain silent and that anything he said could be held against him in court, was twice informed that he had the right to the presence of an attorney during questioning and that an attorney would be appointed if he could not afford one, and twice indicated he understood those rights and was willing to speak to the detectives. (CT 848-49; 853-54.) A determination as to the validity of Petitioner's waiver of his Miranda[5] rights requires an analysis of the totality of the circumstances surrounding the waiver. Fare v. Michael C., 442 U.S. 707, 724-25 (1979). The lack of parental notification is one of the factors to be considered in assessing the voluntariness of a juvenile's confession or the waiver of his or

---

[5] Miranda v. Arizona, 384 U.S. 436, 479 (1966) (holding that in order for a statement made during custodial interrogation to be admitted into evidence, a suspect "must be warned prior to any questioning that he has the right to remain silent, that anything he says can be used against him in a court of law, that he has the right to the presence of an attorney, and that if he cannot afford an attorney one will be appointed for him prior to any questioning if he so desires.")

her rights during an interrogation.  U.S. v. Doe, 155 F.3d 1070, 1075 (9th Cir. 1998).  In addition, the Supreme Court "has emphasized that admissions and confessions of juveniles require special caution."  In re Gault, 387 U.S. 1, 45 (1967).

The Court need not determine whether a motion to suppress would have been successful in order to determine whether counsel's decision to advise Petitioner without filing a suppression motion  "'was within the range of competence demanded of attorneys in criminal cases.'"  Hill, 474 U.S. at 56, (quoting McMann v. Richardson, 397 U.S. 759, 771 (1990)).  Petitioner states in his declaration that his attorney was prepared to file a motion to suppress and was confident that the statements would be suppressed.  (Evid. Hr'g Mot., Ex. A, Pet.'s Decl. ¶ 5.)  As such, any contention that counsel's advice to plead guilty was made with a mistaken belief by counsel that the statements would not be suppressed is without merit.  Likewise, any contention that Petitioner entered his guilty plea based on the belief that the statements would be used against him at trial is also without merit.  It was Petitioner's decision to plead guilty which rendered the filing of a suppression motion unnecessary, and Petitioner has not shown deficient performance arising from the failure of his counsel to file the motion.  Strickland, 466 U.S. at 69 ("[The] reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions."); Langford, 110 F.3d at 1386-88 (petitioner failed to demonstrate ineffective assistance of counsel based on a failure to file suppression motion where he insisted on pleading guilty).  Neither can Petitioner demonstrate prejudice, as he was told by counsel that the statements would be suppressed if such a motion was filed.  As such, he has failed to show a reasonable probability that he would not have pled guilty and would have insisted on going to trial but for counsel's failure to actually file the motion.  Hill, 474 U.S. at 59.  Based on a de novo review of this aspect of claim two, Petitioner has not established constitutionally ineffective assistance of counsel. Id.; Strickland, 466 U.S. at 687, 691.

**3)  Failure to have MRI examined by an expert**

Petitioner next contends that trial counsel failed to "have an available MRI examined by experts to determine if Petitioner had diminished capacity of brain development as a 15 year old."  (FAP at 7.)  Respondent counters that Petitioner has failed to present a factual basis for

this claim in that he does not allege when, where or by whom the MRI was performed, when it became available or whether his attorney knew or should have known of its existence, and does not specify if the MRI applies to his plea or sentence, nor what if anything it revealed about his brain development. (Ans. Mem. at 31.) Petitioner replies simply that counsel should have had the MRI examined to determine if any physical evidence of lack of brain development might have been discernable, so as to potentially serve as a mitigating factor in sentencing or as a defense at trial. (Traverse at 21.) He states in his declaration that: "Within one month of my arrest I was taken to Children's Hospital where an MRI was taken of my brain. Neither of my attorneys spoke to me about the results of the MRI nor did they present it to any expert physician or other person for analysis." (Pet.'s Dec. ¶ 6.)

This claim relies on speculation that the MRI provides insight into Petitioner's condition as it relates to his ability to enter a guilty plea or his level of culpability for his crimes. Even if it could be shown to contain such information, Petitioner has failed to demonstrate that it was not among the medical records reviewed by Dr. Scott. The psychiatric report prepared by Dr. Scott indicates that Petitioner's medical history and records were examined, and revealed that although Petitioner had a history of head trauma, he "did not have a history of seizures, serious head trauma, loss of consciousness, coma nor any other serious medical condition." (CT 693, 708, 739.) Thus, the record is clear that at the request of counsel, Petitioner's medical records were examined by Dr. Scott, M.D., the Chief of the Forensic Psychiatry Division at the University of California-Davis, and Petitioner has failed to establish that the MRI was not part of that examination. Neither has Petitioner presented any evidence, here or to the state courts, that assuming the MRI was not part of his medical records reviewed by Dr. Scott it actually reveals something relevant to his ability to present a mental health or diminished capacity defense. As such, there is nothing in the record to support a claim of deficient performance or prejudice with respect to the MRI. See Wildman v. Johnson, 261 F.3d 832, 839 (9th Cir. 2001) (speculation that counsel could have retained an expert does not establish prejudice where there was no evidence that an expert would testify favorably to petitioner). Accordingly, based on an independent review of the record, it is clear that the state supreme court's silent denial of this

claim was neither contrary to, nor involved an unreasonable application of, clearly established federal law. Hill, 474 U.S. at 59; Strickland, 466 U.S. at 687, 691.

Petitioner contends that if an evidentiary hearing is held he would call a number of the experts listed in the AMA's amicus curiae brief filed in the Roper case "to testify to their expertise regarding juveniles and their brain development, MRI evidence, and their maturity and restricted ability to make judgments all as it relates to culpability and appropriate punishment with focus on Petitioner and the sentence he received in the present case." (Evid. Hr'g Mot. at 10.) Petitioner indicates that an evidentiary hearing would serve to develop the record with respect to evidence contained in the AMA amicus brief which the Roper Court relied on to recognize general differences between juveniles and adults, including: (1) the lack of maturity and an underdeveloped sense of responsibility which often result in impetuous and ill-considered actions; and (2) a heightened vulnerability to outside influences, including peer pressure. (Id. at 9-10.) Petitioner has attached as exhibits to his original Petition filed in this action a copy of the AMA amicus brief, along with a report of the American Bar Association on adolescent brain development as it relates to legal culpability, and an article from the National Institute of Mental Health containing a brief overview of research into brain development during adolescence. (Pet. Exs. [Doc. No. 3] 8-10.)

Respondent replies that the Roper materials were known to, considered by, and taken for granted by trial counsel and every court to which Petitioner has presented his claims, and that they merely stand for the obvious and undisputed principle that juveniles, as a general rule, are immature, more susceptible to peer pressure, lack impulse control and have incomplete character development, all of which affect their judgment and decision making and are appropriate factors to be considered in assessing their culpability. (Ans. Mem. at 36.) Respondent also contends that this information was in fact presented to the trial court by Petitioner's counsel in the sentencing memorandum and was the basis for procuring the lowest possible sentence to which Petitioner was exposed. (Id.)

In presenting his claim to the state appellate court in the coram vobis petition, Petitioner contended that the MRI was taken shortly after he committed the crimes, "so there is evidence

frozen in time within the prosecution's and lower court's custody which can be submitted for an expert opinion." (Lodgment No. 12 at 2.)  He alleged that the AMA's amicus curiae brief in Roper sets out expert opinions and descriptions of normal adolescent brain development, and contains conclusions of the National Institute of Mental Health and the Laboratory of Neuro Imaging at the University of California Los Angeles that "intellectual maturity, the age of reason, does not arrive until age 25." (Id. at 1-2.)  When presenting the claim to the state supreme court in the habeas petition, Petitioner merely alleged that counsel had not provided the MRI to an expert for examination, and referred to the claim as presented in the coram vobis petition.  (Lodgment No. 16 at 23.)

Petitioner did not provide the state court, just as he has not provided this Court, with evidence demonstrating that the results of the MRI actually support a finding that he had an overlooked mental health defense, that it was not among his medical records referenced in Dr. Scott's report, or that it in any way calls into question Dr. Scott's diagnosis.  Petitioner has therefore failed to develop in the state courts facts supporting the MRI aspect of claim two.  See Baja v. Ducharme, 187 F.3d 1075, 1079 (9th Cir. 1999) (holding that petitioner had failed to develop a factual basis for his claim in state proceedings because he had the opportunity to come forward with affidavits and other evidence in support of his ineffective assistance claim but failed to do so); see also Williams v. Taylor, 529 U.S. 420, 435 (finding that diligence in developing the record in state court "depends upon whether the prisoner made a reasonable attempt, in light of the information available at the time, to investigate and pursue claims in state court.").  As a result, Petitioner's request for an evidentiary hearing is subject to the requirements of 28 U.S.C. § 2254(e)(2), which provides that where a federal habeas petitioner has failed to develop the factual basis for his claim in the state court, this Court shall not hold an evidentiary hearing unless Petitioner shows that the claim: (1) rests on a new rule of constitutional law made retroactive to cases on collateral review by the Supreme Court, or (2) is based on a factual predicate that could not have been previously discovered through the exercise of due diligence and the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for the constitutional error no reasonable factfinder would have found

Petitioner guilty of the underlying offense. <u>Bragg v. Galaza</u>, 242 F.3d 1082, 1089-90 (9th Cir. 2001); 28 U.S.C. § 2254(e)(2).  To the extent Petitioner seeks discovery in order to develop factual support for this aspect of claim two (<u>see</u> Evid. Hr'g Mot. at 13), such a request is also subject to the requirement of § 2254(e)(2).  <u>Holland v. Jackson</u>, 542 U.S. 649, 653 (2004).  In addition, mere speculation that the MRI might be favorable to Petitioner is insufficient to permit discovery. <u>Calderon v. District Court</u>, 98 F.3d 1102, 1106 (9th Cir. 1996) ("[C]ourts should not allow prisoners to use federal discovery for fishing expeditions to investigate mere speculation.")

Petitioner contends that "the holding and rationale in *Roper v. Simmons, supra*, meets the criteria of 28 U.S.C. § 2254(e)(2) in that a new rule of constitutional law made retroactive by the Supreme Court which was previously unavailable has set new standards for Eighth Amendment considerations as they pertain to juveniles thereby justifying the court granting the request for an evidentiary hearing." (Evid. Hr'g Mot. at 11-12.)  Respondent replies that <u>Roper</u> was decided in 2005, long before Petitioner filed his habeas petition in the state supreme court in 2007, and is therefore neither a new rule of constitutional law nor the basis for a new factual predicate within the meaning of § 2245(e)(2).  (Opp'n Evid. Hr'g Mot. at 4-5.)

Although there is a valid argument that <u>Roper</u> announced a new rule of constitutional law which is retroactive on collateral appeal, <u>see</u> <u>e.g.</u> <u>Arroyo v. Dretke</u>, 362 F.Supp.2d 859, 883 (W.D. Tex. 2005), Petitioner has failed to demonstrate that the Supreme Court itself has made <u>Roper</u>'s holding retroactive.  <u>See</u> <u>Tyler v. Caine</u>, 533 U.S. 656, 663 (2001) (holding that a case is "made retroactive to cases on collateral review" within the meaning of 28 U.S.C. § 2244(b)(2)(A) only when the Court expressly says so either in the case itself or in a subsequent case.)  In any event, the rule announced in <u>Roper</u> by its expressed holding applies only to juveniles sentenced to death, not to juveniles sentenced to terms of imprisonment.

Moreover, assuming, *arguendo*, that <u>Roper</u> could satisfy the provisions of § 2254(e)(2), Petitioner has not attempted to establish that the expert opinions he refers to regarding the general nature of juvenile development directly attack or contradict the conclusions or diagnosis <u>actually</u> arrived at by Dr. Scott following his examination of Petitioner.  Nor has Petitioner demonstrated, nor even alleged, that Dr. Scott was not aware of the materials referenced in the

AMA's amicus brief or the other studies submitted by Petitioner, nearly all of which rely on published materials which predate Petitioner's psychiatric examination and diagnosis. (See Pet. Exs. [Doc. No. 3] 8-10.)  Petitioner has also failed to demonstrate that he was diagnosed inconsistently with the conclusions contained in those materials.  In fact, the factual predicate of this aspect of claim two has been known to Petitioner since he pled guilty, or at least since Roper was decided over five years ago, and he has failed to develop the facts supporting this claim either here or in the state courts by having an expert examine the MRI or requesting the appointment of an expert for that reason, by determining whether the MRI was or was not among his medical records examined by Dr. Scott, by determining whether Dr. Scott was aware of and took into consideration the Roper materials, or by determining whether Dr. Scott's diagnosis was inconsistent with the expert opinions and conclusions supporting Roper.  As a result, the Court is precluded from conducting an evidentiary hearing, or allowing discovery, with respect to allegations that counsel did not have the MRI examined by an expert.  Bragg, 242 F.3d at 1090; 28 U.S.C. § 2254(e)(2); Holland, 542 U.S. at 653.

However, even if the Court is not precluded by § 2254(e)(2) from conducting an evidentiary hearing or allowing discovery, either because § 2254(e)(2) does not apply or because Petitioner could satisfy one of its exceptions, neither a hearing nor discovery is warranted in this case.  When not precluded by § 2254(e)(2), an evidentiary hearing is available "where the petitioner's allegations, if proved, would establish the right to relief."  Campbell v. Wood, 18 F.3d 662, 679 (9th Cir. 1994).  Petitioner has not alleged facts which, if proved, would demonstrate that his trial counsel rendered deficient performance by failing to have the MRI examined by an expert because he has failed to allege that the MRI was not among his medical records examined by Dr. Scott at the request of his attorneys.  Even assuming the First Amended Petition could be read to include such an allegation, Petitioner has not alleged facts which, if true, would demonstrate prejudice, because he has not alleged that the MRI actually contains information helpful to the determination as to whether he had defenses available to him which were overlooked by counsel.  Rather, he merely alleges that the MRI contains evidence of Petitioner's brain development at that time of the crimes, and relies on the general principles set

forth in <u>Roper</u> regarding juvenile development to assume that potential evidence may exist regarding his mental capacity as it relates to his culpability.  Such conclusory allegations are insufficient to justify an evidentiary hearing or discovery.  <u>Campbell</u>, 18 F.3d at 679; <u>Calderon</u>, 98 F.3d at 1106.

In sum, there are no factual allegations that the MRI reveals that Petitioner had an undiagnosed mental defect or disease which would support a mental health defense, or that it was not examined as part of Dr. Scott's examination.  Nor are there any concrete allegations which, if true, support a finding that there is a reasonable probability that Petitioner would not have pled guilty, or would have pled not guilty by reason of insanity, but for counsel's failure to have the MRI examined by an expert.  Accordingly, Petitioner's request for an evidentiary hearing or discovery as to this aspect of claim two is denied because he has failed to develop facts supporting the claim in state court and because his allegations, even if true, do not entitle him to relief.  As set forth above, habeas relief is denied as to this aspect of claim two because, based on an independent review of the record, Petitioner has demonstrated neither deficient performance nor prejudice in connection to the MRI, and the silent denial of the claim by the state supreme court was therefore neither contrary to, nor involved an unreasonable application of, clearly established federal law.

### 4) Age and immaturity

In the final aspect of claim two, Petitioner contends that he received ineffective assistance of counsel because trial counsel induced "a plea of guilty from Petitioner who could not have entered into such a binding contract due to his age and immaturity." (FAP at 7.)  Respondent contends that there is no evidence to support an allegation that Petitioner was induced to plead guilty, as there are no facts alleged whatsoever regarding the advice he was given in connection to his plea. (Ans. Mem. at 32.)  Rather, Respondent contends that the record shows Petitioner told his psychiatrist that he wanted to plead guilty in order to take responsibility for what he had done in order to spare further trauma to the victims and their families, and that he deserved punishment and felt that a burden had been lifted following his plea. (<u>Id.</u>)

/ / /

Because Petitioner's decision to plead guilty involved the waiver of constitutional trial rights, he must enter the guilty plea knowingly, intelligently and voluntarily. McCarthy v. United States, 394 U.S. 459, 466 (1969). Petitioner's counsel indicated in open court that Petitioner pled guilty in order to avoid causing "any further pain to the victims, their families, or his own family." (RT 6.) Petitioner signed and initialed a change of plea form after he was placed under oath and was advised of and waived his constitutional rights. (CT 7-12, 512-14.) He then provided, again through counsel, as a factual basis for the plea, in addition to the police reports, his statement that: "At age fifteen, I brought a gun to school and intentionally shot fifteen people, killing two, and causing great bodily injury to thirteen others. I did so, willfully, deliberately and with premeditation." (RT 13-18.)

Petitioner first contends that he was unable to enter a guilty plea because he was not able to enter a binding contract due to his age and immaturity. To the extent he contends contract principles are implicated here he is mistaken because he entered an unconditional guilty plea with no accompanying promises. See Santabello v. New York, 404 U.S. 257, 262 (1971) (holding that "when a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled.")

To the extent he contends that he was too young and immature to enter a guilty plea, the record is clear that his counsel and the trial judge took his age and immaturity into consideration. The sentencing memorandum identified these circumstances in mitigation:

1. Although Dr. Scott's psychiatric report clearly states that Petitioner does not suffer from any "conduct disorder," his depression and attention deficit disorder played a factor in the commission of the offenses, and his conduct was influenced by emotional and psychological factors as explained by Dr. Scott;

2. He was encouraged by his peers to commit the crimes;

3. He has no prior criminal record of any kind and was an immature 15 year-old at the time of the crimes;

4. He was suffering from a mental condition that helps explain why a 15 year-old who is not criminally oriented could commit such awful crimes;

5. He admitted the offenses to the police at the time of his arrest and entered a guilty plea prior to the preliminary hearing, saving the victims additional pain;

6. He is extremely remorseful and cooperated with the District Attorney and the Federal Bureau of Investigation in the hope that he could add something that might be helpful in understanding or preventing school shootings.

(CT 528-29.)

The record supports a finding that trial counsel and the trial judge were aware that Petitioner's age and immaturity were important factors to be taken into consideration. To the extent Petitioner relies on the expert opinion evidence presented in support of Roper to support a claim that as a juvenile he was unable to enter a plea, he has not demonstrated that the materials support a finding that a juvenile cannot enter a plea simply by virtue of his or her status as a juvenile. Moreover, Petitioner has not attempted to demonstrate, either here or in the state court, that Dr. Scott's diagnosis is inconsistent with the Roper materials, that Dr. Scott was not aware of those materials or failed to take them into consideration when making his diagnosis, or that general expert opinions regarding the nature of juvenile development are superior to an actual diagnosis. Thus, Petitioner has failed to develop the facts supporting this claim in the state court, and this Court is precluded from conducting an evidentiary hearing or permitting discovery. Bragg, 242 F.3d at 1090; 28 U.S.C. § 2254(e)(2); Holland, 542 U.S. at 653. Even to the extent the Court is not precluded from conducting an evidentiary hearing, Petitioner is not entitled to one because, for the following reasons, his allegations, even if true, do not entitle him to habeas relief.

Petitioner indicates that he and his two trial attorneys will testify at an evidentiary hearing as to the circumstances of the plea. (Evid. Hr'g Mot. at 7-8.) Although he makes no proffer regarding the expected testimony of his attorneys, in his own declaration he states:

My trial attorney Randy Mize came to me & presented the change of plea form telling me I do not have a viable defense and I should sign the form because there is nothing he could do. He told me if I didn't sign it I would receive 435 years as I would lose at trial. He did not discuss any defenses with me nor did he explain any other alternatives such as explaining my mental capacity or insanity defense. I read the change of plea form he presented to me and told him I could not sign it because it stated I willfully & intentionally committed the offenses of 1st degree murder which was not true as I did not intend to kill anyone. He responded that I had to sign it and if I did not I would get 435 years. So I signed it but under duress. He did not investigate my mental maturity and ability to exercise reasoned judgment and control my impulses.

(Evid. Hr'g Mot., Ex. A, Pet.'s Decl. ¶ 4.)

Petitioner has failed to demonstrate deficient performance based on his contention that counsel ignored his belief that he could not be guilty of premeditated murder since he did not intend to kill anyone. The record indicates that counsel was aware that Petitioner stated that he did not want anyone to die as a result of the shooting, as statements to that effect are contained in the transcript of Petitioner's police interrogation as well as the account of the shooting he provided to Dr. Scott. (CT 704, 880.) However, Petitioner's actions support a finding of deliberation and premeditation despite his stated desire that he did not want anyone to die. The record indicates that Petitioner had been planning on taking a gun to school for several days, that he took 40 rounds of ammunition with him to school on the day of the shooting along with a gun, and that he entered the bathroom stall, loaded the gun, exited the stall and fired the first shot into the back of the head of a fellow student. (CT 704-05.) As the state court found,

> [Petitioner] shot two students and a teacher who were in the restroom. He walked out of the restroom and began shooting randomly at school staff and students. He re-entered the restroom four times to reload. Before he was confronted by police officers and surrendered, he had shot 15 persons. Two of them died. When questioned, appellant stated he shot the people because he was "mad at everything." Appellant stated: "I didn't want anybody to die, but if they did, then oh well."

(Lodgment No. 5, People v. Williams, No. D040917, slip op. at 2.)

Petitioner's actions clearly support a finding of premeditation and deliberation. People v. Manriquez, 37 Cal.4th 547, 577-78 (2005) (premeditation and deliberation can be shown by planning, motive and manner of killing sufficient to support an inference that the killing occurred as the result of preexisting reflection rather than unconsidered or rash impulse); People v. Hawkins, 10 Cal.4th 920, 956-57 (1995) (shooting victim in the back of the head was sufficient evidence of premeditation and deliberation despite minimal evidence of planning and motive); People v. Koontz, 27 Cal.4th 1041, 1080-82 (2002) (evidence that the defendant fired a shot at a vital area of victim's body and prevented a witness from calling an ambulance represented "a manner of killing indicative of a deliberate intent to kill.") Thus, Petitioner has not established that counsel rendered deficient performance by advising him to plead guilty despite Petitioner's contention that he could not be guilty of premeditated murder because he did not want anyone to die. For the same reason, Petitioner has failed to demonstrate a reasonable

probability that, but for counsel's determination or advice in that regard, he would not have pled guilty and insisted on going to trial.

Based on a de novo review, it is clear that Petitioner has not established constitutionally ineffective assistance of counsel with respect to the final aspect of claim two. Hill, 474 U.S. at 59; Strickland, 466 U.S. at 687, 691. Petitioner's claim that he was too immature to understand the consequences of his plea or intelligently waive his constitutional trial rights, and the allegations contained in his declaration that counsel coerced him into pleading guilty without explaining his options regarding mental health or diminished capacity defenses, are discussed immediately below in claim three. Accordingly, habeas relief is **DENIED** as to claim two.

**C.    Claim Three**

Petitioner alleges in claim three that he was denied the effective assistance of counsel in violation of the Sixth and Fourteenth Amendments because his appointed trial counsel failed "to explore and present Petitioner with all options regarding defenses, including diminished capacity, insanity and others prior to inducing Petitioner to enter a guilty plea" in that: (1) Petitioner had an underdeveloped mental capacity; (2) trial counsel failed to thoroughly investigate his mental maturity and the limitations on his ability to exercise reasoned judgment and control his impulses due to his youth and how that may have provided defenses based on insanity, diminished capacity and/or lack of intent; and (3) trial counsel improperly advised him to plead guilty despite his lack of understanding of the consequences of the plea and the waiver of constitutional rights due to his youth and physical immaturity. (FAP at 8.)

Respondent argues that even assuming Petitioner had "an undeveloped mental capacity" he has not described any conduct of his counsel which was deficient or caused him prejudice. (Ans. Mem. at 35.) Respondent contends that the Roper materials, aside from being generally known to and considered by counsel and the court, merely expound obvious and undisputed principles which were actually articulated by trial counsel at Petitioner's sentencing hearing to secure the lowest possible sentence. (Id.) Respondent also contends that because the defense of diminished capacity is no longer a viable defense in California, there were obvious tactical reasons for counsel to advise Petitioner to plead guilty, and no prejudice because the psychiatric

-29-

05cv0737

1  evaluation completely undermines any argument that Petitioner had a viable mental health
2  defense.  (Id. at 36-37.)

3        Claim three was presented to the state supreme court in a habeas petition, without the
4  benefit of Petitioner's declaration, and silently denied.  (Lodgment No. 16 at 20-23; Lodgment
5  No. 17.)  It was also presented without the declaration to the appellate court in the coram vobis
6  petition, and was silently denied by that court and by the state supreme court in the subsequent
7  petition for review.  (Lodgment Nos. 12-15.)  Although the claim was presented to the trial court
8  and denied as untimely, it was not based on the materials filed in support of Roper or on
9  Petitioner's declaration.  (Lodgment No. 10.)  In fact, Petitioner did not present any evidence in
10 support of his claim to the trial court, but relied upon conclusory allegations that he lacked the
11 ability to enter a plea due to his age and immaturity.  (Id.)

12       Because the claim as presented to the state appellate and supreme courts was cast in a
13 different light by referencing the expert evidence in the Roper amicus brief, the first time any
14 evidence was presented in support of the claim, the Court will not look through the silent denials
15 by those courts to the trial court's procedural bar.  See Vasquez v. Hillery, 474 U.S. 254, 260
16 (1986) (supplemental evidence which "fundamentally alter the legal claim already considered
17 by the state courts" can render a claim unexhausted).  Rather, with respect to the aspects of claim
18 three which rely on the Roper materials, the Court will conduct an independent review of the
19 record in order to determine whether the silent denial by the state supreme court was contrary
20 to, or involved an unreasonable application of, clearly established federal law applicable to
21 claims of ineffective assistance of counsel.  Pirtle, 313 F.3d at 1167; Greene, 288 F.3d at 1089.
22 With respect to the aspects of claim three which rely on Petitioner's declaration, which was
23 never presented to any state court,[6] the Court will conduct a de novo review.  Killian, 282 F.3d
24 at 1208.

25       **1)  Undeveloped mental capacity/failure to investigate mental maturity**

26       Petitioner contends he received ineffective assistance of counsel because trial counsel
27 advised him to plead guilty despite the fact that he had an undeveloped mental capacity.  (FAP

28
_____
        [6]  See footnote 4, supra.

at 8.) He also contends that trial counsel failed to thoroughly investigate his mental maturity and the limitations on his ability to exercise reasoned judgment and control his impulses due to his youth and how that may have provided defenses based on insanity, diminished capacity and/or lack of intent. (Id.) However, Petitioner does not provide any evidence that a plea of not guilty by reason of insanity was available to him, and does not identify any viable mental health defenses overlooked by counsel. Rather, he merely speculates that such defenses might have been available to him and concludes that his trial counsel rendered deficient performance because no such defenses were discussed prior to entering the plea.

Respondent is technically correct that California has eliminated diminished capacity defenses. See People v. Mejia-Lenares, 135 Cal.App.4th 1437, 1450 (2006) (noting that although diminished capacity defenses were eliminated by the California Legislature in 1981 and by voter initiative in 1982, "diminished actuality" remains a viable concept.), citing Cal. Penal Code section 25(a) ("The defense of diminished capacity is hereby abolished. . . . evidence concerning an accused person's intoxication, trauma, mental illness, disease, or defect shall not be admissible to show or negate capacity to form that particular purpose, intent, motive, malice, aforethought, knowledge, or other mental state required tor the commission of the crime charged."). California permits "introduction of evidence of mental illness when relevant to whether a defendant actually formed a mental state that is an element of a charged offense, but [does] not permit an expert to offer an opinion on whether a defendant had the mental capacity to form a specific mental state or whether the defendant actually harbored such a mental state." People v. Coddington, 23 Cal.4th 529, 582 (2000), overruled on other grounds Price v. Superior Court, 25 Cal.4th 1046 (2001). In order to show legal insanity in California, the accused must have been "incapable of knowing or understanding the nature and quality of his or her act and of distinguishing right from wrong at the time of the commission of the offense." Mejia-Lenares, 135 Cal.App.4th at 1447.

As quoted above, Petitioner alleges in his declaration that his counsel: "told me if I didn't [plead guilty] I would receive 435 years as I would lose at trial. He did not discuss any defenses with me nor did he explain any other alternatives such as explaining my mental capacity or

insanity defense." (Evid. Hr'g Mot., Ex. A, Pet.'s Decl. ¶ 4.)  Petitioner cannot demonstrate deficient performance arising from counsel's decision to advise him to plead guilty without discussing mental health defenses if he did not have any viable mental health defenses to be discussed.  Thus, Petitioner would need to establish that evidence could have been introduced at his trial that he suffered from a mental illness which was relevant to whether he actually formed the intent necessary to commit premeditated murder, that is, whether he acted with the requisite willful, premeditated and deliberate intent to kill.  Coddington, 23 Cal.4th at 582.  In order to support his claim that he would have pled not guilty by reason on insanity but for ineffective assistance of counsel, he would need to establish that evidence could have been introduced that he was incapable of knowing or understanding the nature and quality of his actions or distinguishing right from wrong.  Mejia-Lenares, 135 Cal.App.4th at 1447.

Petitioner contends that he made statements to Dr. Scott which demonstrate "classic disassociation," including that he felt like he was "going through the motions" and experienced the shootings "as if watching it from afar."  (Traverse at 19.)  However, Dr. Scott did not diagnose Petitioner with a dissociative disorder or any other form of psychosis.  The materials submitted by Petitioner, which merely set forth general principles regarding juvenile brain development, do not provide evidence that he did not achieve the mental state necessary to commit premeditated murder.  Neither do they call into question Dr. Scott's diagnosis, which was based in part on the statements which Petitioner now contends contain classic symptoms of dissociative disorder.  As stated previously, Petitioner has also failed to demonstrate that Dr. Scott did not take the Roper materials into consideration when making his diagnosis.  Moreover, Petitioner's allegation that he believed he was not guilty of premeditated murder because he did not want anyone to die is without merit for the reasons set forth above, as there is overwhelming evidence in this case of deliberation and premeditation.

Dr. Scott's psychiatric report does not support a finding that Petitioner had an insanity defense available to him.  See Mejia-Lenares, 135 Cal.App.4th at 1447 (an insanity defense in California is available only to defendants "incapable of knowing or understanding the nature and quality of his or her act and of distinguishing right from wrong at the time of the commission of

the offense.")  Rather, Petitioner was examined and evaluated by a psychiatrist at the request of counsel and found to be free from any conduct disorders or psychotic features.  (CT 696, 708, 714.)  Petitioner's declaration stating that he was advised that he would be sentenced to the maximum term if he went to trial because he would be found guilty appears to be sound analysis in light of the overwhelming evidence of his guilt and Petitioner's failure to identify any viable mental health defense.  Petitioner has certainly not demonstrated otherwise.  Thus, Petitioner has not satisfied the highly demanding standard required to show that counsel's performance fell below prevailing professional norms.  Strickland, 466 U.S. at 689-92.

Petitioner has failed, both here and in the state courts, to present any factual support for the conclusory allegation that he pled guilty without knowledge of available mental health defenses.  In state court, his claim relied on the general principles set forth in the Roper amicus brief that juveniles are less developed mentally and therefore less culpable than adults.  In this Court, he goes a little further by presenting his own declaration and seeking to conduct discovery and hold an evidentiary hearing in order to introduce evidence underlying the principles behind Roper's holding that the Eighth and Fourteenth Amendments prohibit the execution of persons who were juveniles when they committed their crimes.  Petitioner is correct that his status as a juvenile at the time of the crimes is an important consideration, particularly with respect to sentencing issues.  See Roper, 543 U.S. at 569 ("as any parent knows and as the scientific and sociological studies respondent and his *amici* cite tend to confirm, '(a) lack of maturity and an undeveloped sense of responsibility are found in youth more often than in adults and are more understandable among the young.  These qualities often result in impetuous and ill-considered actions and decisions.'"), quoting Johnson v. Texas, 509 U.S. 350, 367 (1993).  In fact, as discussed below with respect to claim four, after briefing closed in this case the Supreme Court decided in Graham v. Florida, 560 U.S. ___, 130 S.Ct. 2011 (2010), that the Eighth and Fourteenth Amendments prohibit the imposition of a life without parole for juvenile offenders who did not commit a homicide.[7]

---

[7]  The Graham case did not alter California law, which at the time of Petitioner's offense precluded a sentence of life imprisonment without the possibility of parole for minors.  See footnote 2, supra.

However, the defect in Petitioner's position is that he has not, and apparently cannot, establish that he himself, by virtue of his age, immaturity, or some other factor inherent within him, possessed a viable mental health defense to the charges of premeditated murder and attempted premeditated murder. Petitioner has set forth no basis for finding that his psychiatric examination and diagnosis support a valid mental health defense of any kind, or that Dr. Scott did not take into considerations the materials Petitioner has submitted regarding adolescent brain development. Nor has Petitioner shown that Dr. Scott's opinion is called into question by those materials, or that reliance by counsel on Dr. Scott's opinion was unreasonable. Thus, Petitioner has not shown that counsel provided anything other than sound, reasonable advice regarding the chance of success if Petitioner decided to go to trial. Neither has Petitioner shown a reasonable probability that, but for the failure of his trial counsel to discuss potential mental health defenses with him, he would not have pled guilty and would have insisted on going to trial. Hill, 474 U.S. at 59; Strickland, 466 U.S. at 687, 691. Petitioner's failure to develop facts supporting this claim in the state court, and his failure to allege facts which, if true, would entitle him to relief, preclude an evidentiary hearing or discovery. Holland, 542 U.S. at 653; Bragg, 242 F.3d at 1090; 28 U.S.C. § 2254(e)(2); Calderon, 98 F.3d at 1106; Campbell, 18 F.3d at 679.

Based on an independent review of the record, it is clear that the silent denial by the state supreme court of the first two aspects of claim three which rely on the Roper materials, was neither contrary to, nor involved an unreasonable application of, clearly established federal law. In addition, a de novo review of the first two aspects of claim three which rely on Petitioner's declaration demonstrates that Petitioner has not established constitutionally ineffective assistance of counsel.

### 3) Voluntariness of plea and waiver of constitutional rights

Petitioner contends that trial counsel advised him to plead guilty despite a lack of understanding of the consequences of the plea and his inability to understand the waiver of his constitutional rights due to his youth and physical immaturity. (FAP at 8.) He contends that he knew of no alternatives other than proceeding to trial on a factual case that would have certainly resulted in a conviction. (Traverse at 20.)

A guilty plea must be voluntary and intelligent, and entered with a sufficient awareness of the relevant circumstances and likely consequences resulting from a waiver of certain fundamental rights. Boykin v. Alabama, 395 U.S. 238, 242-44 (1969).  Voluntariness must be demonstrated by tangible evidence in the record, as determined by the totality of the circumstances surrounding the plea. Id.  A defendant in a criminal proceeding must be able to, "with the help of counsel, rationally weigh the advantages of going to trial against the advantages of pleading guilty." Brady v. United States, 397 U.S. 742, 750 (1970).

Petitioner may obtain habeas relief by demonstrating that due to counsel's deficiencies, his guilty plea did not represent "a voluntary and intelligent choice among the alternative courses of action open to the defendant." North Carolina v. Alford, 400 U.S. 25, 31 (1970).  "[T]he voluntariness of the plea depends on whether counsel's advice 'was within the range of competence demanded of attorneys in criminal cases.'" Hill, 474 U.S. at 56 (quoting McMann, 397 U.S. at 771).

The trial judge explained to Petitioner in open court the rights he was giving up as a result of his guilty plea, the punishment he faced, and the consequences of his plea.  (RT 7-12.) Petitioner indicated that he read and understood the change of plea form which he signed and initialed. (RT 11-12.)  He then admitted his guilt and entered his plea "freely and voluntarily." (RT 13-18.)  Although the record reflects that Petitioner's plea was informed and voluntary, he now contends that he received ineffective assistance of counsel in connection to the plea because his counsel failed to investigate alternatives to a guilty plea, including potential mental health defenses. (FAP at 8; Traverse at 20.)  However, as discussed above, Petitioner has not provided any evidence in support of those allegations.

Because Petitioner has failed to identify a viable mental health defense to the charges which was overlooked by his counsel, he has failed to show that the advice he received from counsel was not "within the range of competence demanded of attorneys in criminal cases," Hill, 474 U.S. at 56, or that his decision to plead guilty did not represent "a voluntary and intelligent choice among the alternative courses of action open to him." Alford, 400 U.S. at 31. Because Petitioner has failed to develop the facts supporting this claim in the state court, this

1  Court is precluded from conducting an evidentiary hearing or permitting discovery.  Holland,

2  542 U.S. at 653; Bragg, 242 F.3d at 1090; 28 U.S.C. § 2254(e)(2).  Nor would the Court conduct

3  an evidentiary hearing or permit discovery if it had discretion to do so, due to the conclusory

4  nature of the claim and the lack of concrete allegations which, if proven true, would entitle

5  Petitioner to relief.  Calderon, 98 F.3d at 1106; Campbell, 18 F.3d at 679.

6        Petitioner has not demonstrated that the silent denial by the state supreme court of that

7  aspect of claim three which relies on the Roper materials was contrary to, or involved an

8  unreasonable application of, clearly established federal law.  Lockyer, 538 U.S. at 75-76;

9  Williams, 529 U.S. at 412; Hill, 474 U.S. at 59; Strickland, 466 U.S. at 687, 691.  Furthermore,

10 even with the benefit of the allegations contained in his declaration and the contentions set forth

11 in the Traverse, a de novo review reveals that he has not established he received constitutionally

12 ineffective assistance of counsel.  Hill, 474 U.S. at 59; Strickland, 466 U.S. at 687, 691.  Habeas

13 relief is **DENIED** as to claim three.

14 **D.    Claim One**

15       Petitioner contends in claim one that he was denied the effective assistance of counsel in

16 violation of the Sixth and Fourteenth Amendments because his appointed appellate counsel

17 failed to:  (1) speak to or communicate with Petitioner in any manner prior to preparing and

18 filing the appellate brief; (2) raise the issue of ineffective assistance of trial counsel or file a

19 habeas petition in state court; (3) raise the issue of Petitioner's mental state; and (4) raise the

20 issue of trial counsel's failure to have Petitioner plead not guilty by reason of insanity.  (FAP at

21 6.) Petitioner requests an evidentiary hearing at which he will testify that his appellate attorney

22 never communicated with him or met with him, and never discussed the grounds raised or the

23 strategy for the appeal.  (Evid. Hr'g Mot., Ex. A, Pet.'s Decl. at ¶ 3.)

24       Respondent contends that because there is no reasoned decision by a lower state court

25 addressing the claim, this Court must conduct an independent review of the record in order to

26 determine whether the silent denial by the state supreme court was contrary to or involved an

27 unreasonable application of clearly established federal law, or was based on an unreasonable

28 determination of the facts.  (Ans. Mem. at 11-12.)  Respondent argues that habeas relief is

unavailable because Petitioner has not made such a showing.  (<u>Id.</u> at 15-21.)  Respondent also argues that Petitioner failed to develop the facts supporting his claims in the state court, and has not stated a colorable claim.  (Opp. to Evid. Hr'g Mot. at 4-8.)

Petitioner presented claim one to the state supreme court in his habeas petition, absent his declaration. (Lodgment No. 16.)  The state supreme court denied the petition without citation of authority or a statement of reasoning.  (Lodgment No. 17.)  In his state appellate court petition for a writ of coram vobis, Petitioner alleged that his claims of ineffective assistance of trial counsel were not raised on appeal because his appointed appellate counsel "neither visited the petitioner not accepted collect telephone calls or expanded the record on appeal by means of an accompanying petition for habeas corpus relief as to ineffective assistance of counsel at the trial level but simply filed an appeal brief without prior approval by the petitioner." (Lodgment No. 12 at 4.)  That petition was denied with an unexplained order.  (Lodgment No. 13.)  Petitioner presented the same allegations of ineffective assistance of appellate counsel to the trial court in his motion to vacate his sentence, which was denied as untimely.[8]  (Lodgment No. 10 at 4; Lodgment No. 11.)

Accordingly, with respect to the first two aspects of claim one, which were presented to the trial court and denied as untimely, the Court will look through the silent denials of those claims by the state supreme and appellate courts to the trial court's order denying the claims on the procedural ground of untimeliness.  <u>Ylst</u>, 501 U.S. at 803.  Because those claims were not adjudicated on the merits in the state court, but were denied on procedural grounds, the Court must conduct a de novo review of the record in addressing the merits of those claims.  <u>Killian</u>, 282 F.3d at 1208.

/ / /

---

[8] Respondent contends that these aspects of claim one were not actually raised in the motion to vacate Petitioner's sentence, but were only "alluded to" in providing an explanation for not raising other claims on appeal. (Ans. Mem. at 13.)  Because the motion to vacate and the coram vobis petition were filed by Petitioner pro se, the Court must liberally construe the allegations set forth therein.  <u>Erickson v. Pardus</u>, 551 U.S. 89, 94 (2007); <u>Corjasso v. Ayers</u>, 278 F.3d 874, 878 (9th Cir. 2002).  Under a liberal construction of those pleadings, it appears that Petitioner intended to raise a claim of ineffective assistance of appellate counsel based on counsel's failure to consult with him and failure to file a habeas petition raising a claim of ineffective assistance of trial counsel.  (<u>See</u> Lodgment No. 10 at 4; Lodgment No. 12 at 4.)

As to the third and fourth aspects of claim one, which were not presented to the lower state courts, the silent denial constitutes an adjudication on the merits, and AEDPA deference applies. Hunter, 982 F.2d at 347-48. As to these claims, the Court must conduct an independent review of the record in order to determine whether the silent denial by the state court was contrary to or involved an unreasonable application of clearly established federal law. Pirtle, 313 F.3d at 1167; Lambert, 288 F.3d at 1089.

The Strickland standard applies to claims of ineffective assistance of appellate counsel. Smith v. Robbins, 528 U.S. 259, 285 (2000). The failure to raise meritless or untenable claims does not constitute ineffective assistance of appellate counsel. Featherstone v. Estelle, 948 F.2d 1497, 1507 (9th Cir. 1991) (where "trial counsel's performance, although not error-free, did not fall below the Strickland standard[,] . . . petitioner was not prejudiced by appellate counsel's decision not to raise issues that had no merit."); Baumann v. United States, 692 F.2d 565, 572 (9th Cir. 1982) (stating that an attorney's failure to raise a meritless legal argument does not constitute ineffective assistance); Gustave v. United States, 627 F.2d 901, 906 (9th Cir. 1980) ("There is no requirement that an attorney appeal issues that are clearly untenable.")

**a) Failure to communicate**

Petitioner first contends that his appellate counsel "neither met with, spoke with, or communicated with Petitioner in any manner prior to writing and filing the brief." (FAP at 6.) There are no allegations in the First Amended Petition regarding in what manner Petitioner was disadvantaged by counsel's failure to meet or consult with him. (Id.) Respondent argues that there is no clearly established federal law which requires an appellate attorney to consult with a client prior to filing an appellate brief, and under AEDPA review the claim must therefore fail. (Ans. Mem. at 15.) Because this aspect of claim one was denied on procedural grounds, however, AEDPA deference does not apply, and the Court must conduct a de novo review as to this claim. Killian, 282 F.3d at 1208; see also Hayes, 399 F.3d at 978 (9th Cir. 2005) (noting that even under de novo review, a habeas petition carries the "burden of proving that [his] detention violates the fundamental liberties of the person, safeguarded against state action by the Federal Constitution.")

As set forth above, Petitioner is required to demonstrate that his appellate counsel's performance was both deficient and prejudicial.  However, Petitioner does not explain why, or even allege that, his appellate counsel's failure to meet with him amounted to deficient performance or resulted in prejudice.  (See FAP at 6.)  Petitioner indicates in his Traverse that he "had a number of additional issues to include in the [appellate] brief which he was precluded from appealing due to the lack of contact by his appellate attorney," but does not identify which claims he is referring to.  (Traverse at 14.)  If the First Amended Petition had been filed pro se, the Court would liberally construe this aspect of claim one as alleging that appellate counsel's failure to consult with Petitioner resulted in the claims of ineffective assistance of trial counsel raised by Petitioner in his pro se state pleadings not being raised on appeal.  Erickson, 551 U.S. at 94; Corjasso, 278 F.3d at 878.  However, the First Amended Petition was filed by counsel. As such, the lack of allegations regarding why the failure to meet with Petitioner constituted deficient performance or resulted in prejudice renders the claim wholly conclusory and without merit.  See James v. Borg, 24 F.3d 20, 26 (9th Cir. 1994) (conclusory allegations that are not supported by specific facts do not merit habeas relief).  Nevertheless, assuming the First Amended Petition could be amended to include allegations that the failure to consult resulted in the failure to raise the claims Petitioner now contends should have been raised on appeal, that is, the claims of ineffective assistance of trial counsel discussed above, the claim is duplicative of the second aspect of claim one discussed immediately below, and it relies on a finding that he was in fact deprived of constitutionally effective assistance of trial counsel, which, as discussed above, he was not.

**b)  Failure to raise IAC claims in a habeas petition**

Petitioner next contends his appellate counsel "failed to raise the issue of ineffective assistance of trial counsel at pre-trial, trial or post-trial and did not file a Petition for Writ of Habeas Corpus so as to go outside the record on appeal." (FAP at 6.)  Respondent contends that this aspect of claim one should be denied on the basis that it is vague, conclusory and unsupported by facts. (Ans. Mem. at 16-17.)  Alternately, Respondent argues the claim fails on its merits because the issues Petitioner contends should have been raised on appeal are without

merit, and because his appellate counsel acted reasonably in pursuing the strongest claims on appeal.  (Id. at 17-18.)

As discussed above with respect to claims two and three, Petitioner has not established that he received constitutionally ineffective assistance of trial counsel.  As such, the failure of his appointed appellate counsel to raise those claims on direct appeal did not amount to deficient performance.  Featherstone, 948 F.2d at 1507; Baumann, 692 F.2d at 572.  Petitioner requests that an evidentiary hearing be held to resolve the "factual issue in dispute regarding that which Petitioner would have requested his appellate attorney include in the brief."  (Traverse at 14.) Petitioner fails to identify any viable claims which were overlooked by appellate counsel. Moreover, counsel's decision did not deprive Petitioner of the opportunity to present the claims to the state courts because the claims of ineffective assistance of trial counsel were ultimately presented to the state courts and, as discussed above, for the most part were resolved on their merits in the state court.  Even to the extent they were denied as untimely rather than on their merits, Petitioner has not established that the delay in presenting the claims was caused by his appellate attorney's actions.  Rather, Petitioner admits that a copy of the appellate brief was provided to him upon its filing.  (Traverse at 13.)  He was then on notice that the claims he wished to be raised were not included, and he could have presented them in a pro se brief at that time.  Petitioner's ability to raise the claims pro se is proven by the fact that he did in fact raise them in the pro se briefs he filed in the state superior, appellate and supreme courts. Accordingly, a de novo review reveals that Petitioner has demonstrated neither deficient performance nor prejudice as a result of his appellate attorney's decision not to raise claims of ineffective assistance of trial counsel on appeal.  Hill, 474 U.S. at 59; Strickland, 466 U.S. at 687, 691; Featherstone, 948 F.2d at 1507.

**c)  Failure to  raise the issue of Petitioner's mental state**

Petitioner claims that appellate counsel "failed to raise the issue of Petitioner's mental state."  (FAP at 6.)  Petitioner cannot succeed on a claim based on appellate counsel's failure to raise a claim alleging that trial counsel rendered constitutionally ineffective assistance by allowing or advising Petitioner to plead guilty despite Petitioner's mental state because, as

discussed above in claims two and three, Petitioner did not receive constitutionally ineffective assistance of counsel in that regard.  Accordingly, based on an independent review of the record, the silent denial of this aspect of claim one by the state supreme court was neither contrary to, nor involved an unreasonable application of clearly established federal law.  Hill, 474 U.S. at 59; Strickland, 466 U.S. at 687, 691; Featherstone, 948 F.2d at 1507.

### d) Failure to have Petitioner plead not guilty by reason of insanity

Similarly, Petitioner cannot succeed on a claim based on appellate counsel's failure to raise a claim alleging that trial counsel rendered constitutionally ineffective assistance by failing to advise or insist that Petitioner plead not guilty by reason of insanity because, as discussed above in claims two and three, Petitioner did not receive constitutionally ineffective assistance of counsel in that regard.  Rather, Petitioner was examined prior to entering a guilty plea by a psychiatrist/medical doctor and was found to be free of conduct disorders or psychosis at the time of the offenses.  There is no support in the record for the allegation that Petitioner had a viable plea of not guilty by reason of insanity, and Petitioner has not established that trial counsel rendered deficient performance, or that he was prejudiced, by the failure to enter a plea of not guilty by reason on insanity.  Accordingly, based on an independent review of the record, the silent denial of this aspect of claim one by the state supreme court was neither contrary to, nor involved an unreasonable application of clearly established federal law.  Lockyer, 538 U.S. at 75-76; Williams, 529 U.S. at 412; Hill, 474 U.S. at 59; Strickland, 466 U.S. at 687, 691; Featherstone, 948 F.2d at 1507.

### D.     Claim Four

Petitioner alleges in his final claim that he was sentenced in violation of the Eighth Amendment's prohibition on cruel and unusual punishment.  (FAP at 9.)  He contends that his culpability was mitigated by his age and maturity, and that "[f]ailure of counsel to read and consider available expert evidence that Petitioner at 15 years of age was not mentally culpable due to an undeveloped brain and with diminished mental capacity to determine risks and consequences of on school campus shooting spree of individuals for real or imagined reasons." (Id.)  Respondent contends that there is no clearly established United States Supreme Court

1  authority holding that imposition of a life sentence for someone in Petitioner's situation violates

2  the Eighth Amendment.  (Ans. Mem .at 43-45.)

3        Petitioner presented claim four, absent the allegations of ineffective assistance of counsel,

4  to the state supreme court in his habeas petition. (Lodgment No. 16.)  The state supreme court

5  denied the petition without citation of authority or a statement of reasoning.  (Lodgment No. 17.)

6  Petitioner presented the same claim to the state appellate court on direct appeal.  (Lodgment No.

7  3.)  The appellate court, in an unpublished opinion, denied the claim on its merits.  (Lodgment

8  No. 5, People v. Williams, No. D040917 (Cal.Ct.App. Jan. 30, 2004).)  The Court will therefore

9  look through the silent denial of claim one by the state supreme court to the state appellate

10  court's opinion.  Ylst, 501 U.S. at 804.

11        In addressing the merits of Petitioner's Eighth Amendment claim, the appellate court here

12  stated:

13        Appellant argues that while it might be reasonable and constitutional to
   apply a section 12022.53, subdivision (d), 25-years-to-life enhancement to a 16-
14  or 17-year-old gang member with an entrenched criminal lifestyle (see *People v.
   Ortiz* (1997) 57 Cal.App.4th 480, 486-487), it was cruel and/or unusual
15  punishment to apply it to him, an immature 15-year-old, who was suffering a
   major depressive episode at the time he murdered two persons and attempted to
16  murder thirteen others.

17        "To determine whether a sentence is cruel or unusual as applied to a
   particular defendant, a reviewing court must examine the circumstances of the
18  offense, including the defendant's motive, the extent of the defendant's
   involvement in the crime, the manner in which the crime was committed, and the
19  consequences of the defendant's acts.  The court must also consider the
   defendant's age, prior criminality and mental capabilities. [Citation.] If the court
20  concludes that the penalty imposed is 'grossly disproportionate to the defendant's
   culpability' [citation] or, stated another way, that the punishment shocks the
21  conscience and offends fundamental notions of human dignity [citation], the court
   must invalidate the sentence as unconstitutional." (*People v. Cox* (2003) 30
22  Cal.4th 916, 969-970.)

23        Appellant was 15 years of age and had no prior history of criminality when
   he committed these very serious crimes.  He was apparently depressed at the time.
24  Against this we note appellant's motive for the crime was apparently to cause
   widespread pain and suffering.  He premeditated the crimes and personally carried
25  them out at a school.  He was suffering from no serious mental disorder and was
   not of limited intelligence.  Having shot three persons in the restroom, rather than
26  recoiling at the enormity of his act, he repeatedly reloaded his gun and continued
   to shoot students and school staff.  The consequences of appellant's act not only
27  on his victims and their families but on the school and on the community is
   incalculable.

28

-42-

1             The imposition of a section 12022.53, subdivision (d), enhancement on
2 appellant was not cruel and/or unusual punishment.

3 (Lodgment No. 5, <u>People v. Williams</u>, No. D040917, slip op. at .)

4      In <u>Harmelin v. Michigan</u>, 501 U.S. 957 (1991), the United States Supreme Court upheld

5 against an Eighth Amendment challenge a sentence of life without parole for possession of

6 cocaine. The Court stated that a comparison between the gravity of the offense and the severity

7 of the sentence must be made first in order to determine whether it is one of the "rare" cases

8 which leads to an inference of gross disproportionality. <u>Id.</u> at 1005. The Supreme Court has also

9 upheld life sentences for recidivists with such nonviolent felonies as the theft of golf clubs,

10 <u>Ewing v. California</u>, 538 U.S. 11, 28 (2003), and obtaining money by false pretenses, <u>Rummel</u>

11 <u>v. Estelle</u>, 445 U.S. 263, 284 (1980).

12      Respondent is correct that there is no United States Supreme Court opinion holding that

13 juveniles cannot be sentenced to life imprisonment for homicide offenses. <u>See</u> <u>Graham</u>, 130

14 S.Ct. at 2043 (opinion of Thomas, J., dissenting) ("The Court holds today that it is 'grossly

15 disproportionate' and hence unconstitutional for any judge or jury to impose a sentence of life

16 without parole on an offender less than 18 years old, *unless he has committed a homicide*.")

17 (italics added). In order for Petitioner to be entitled to relief, therefore, he must demonstrate that

18 it was objectively unreasonable for the appellate court to determine that this is not one of the rare

19 cases which leads to an inference of gross disproportionality. <u>Lockyer</u>, 538 U.S. at 75-76;

20 <u>Harmelin</u>, 501 U.S. at 1005.

21      As the state court here correctly noted, the gravity of Petitioner's offense can hardly be

22 overstated. He killed two people and wounded thirteen others, mostly fellow high school

23 students, while the victims were attending school. And although he was sentenced to life in

24 prison, he will be eligible for parole at age 66. Petitioner's crimes were much worse than those

25 in <u>Harmeline</u>, <u>Ewing</u> and <u>Rummel</u>, and his sentence comparable with sentences imposed in those

26 cases, all of which were found not to be disproportional. However, Petitioner is correct that his

27 status as a juvenile must be taken into consideration when analyzing an Eighth Amendment

28 claim. <u>See</u> <u>Roper</u>, 543 U.S. at 569; <u>Johnson</u>, 509 U.S. at 367. But in finding that life without

the possibility of parole was prohibited for juveniles who had not committed a homicide, the Supreme Court noted that "juveniles offender who committed both homicide and nonhomicide crimes present a different situation for a sentencing judge than juvenile offenders who committed no homicide.  It is difficult to say that a defendant who receives a life sentence on an nonhomicide offense but who was at the same time convicted of homicide is not in some sense being punished in part for the homicide when the judge makes the sentencing determination."  Graham, 130 S.Ct. at 2023.  Thus, the Supreme Court has at least tacitly recognized that life without parole for a juvenile who has committed homicide does not violate the Eighth Amendment, or at least it has never so held.  Since there is no clearly established federal law holding that a sentence of 50 years-to-life for a juvenile who killed two people and wounded thirteen others violates the Eighth Amendment, and because it is objectively reasonable to find that such a sentence is not grossly disproportionate to those crimes, the appellate court's adjudication of this claim was neither contrary to, nor involved an unreasonable application of, clearly established federal law.  Lockyer, 538 U.S. at 75-76; Williams, 529 U.S. at 412; Harmelin, 501 U.S. at 1005.

To the extent the allegations in the First Amended Petition that counsel failed to read and consider available expert evidence on the subject of juvenile brain development is an attempt to state a claim for ineffective assistance of counsel, it is without merit.  The claim was presented to the state appellate court in the coram vobis petition.  (Lodgment No. 12 at 3.)  It was also presented to the state supreme court in the petition for review of the denial of the coram vobis petition.  (Lodgment No. 14.)  Both petitions were denied without a statement of reasoning or citation of authority. (Lodgment Nos. 13, 15.)  It was not presented in the motion to vacate filed in the trial court.  (Lodgment No. 10.)  Accordingly, the Court must conduct an independent review in order to determine whether the silent denial by the state court was contrary to, or involved an unreasonable application of, clearly established federal law.  Pirtle, 313 F.3d at 1167; Greene, 288 F.3d at 1089.

As discussed above, the sentencing memorandum filed by Petitioner's counsel conveyed to the trial court the necessity of taking into consideration Petitioner's youth and immaturity

when imposing a sentence. (CT 518-40.)  Thus, Petitioner has not shown deficient performance in regard to the information counsel provided to the sentencing court.  <u>Strickland</u>, 466 U.S. at 687.  In addition, the appellate court noted that California law required imposition of Petitioner's sentence unless his convictions or sentence enhancements were dismissed.  (Lodgment No. 5, <u>People v. Williams</u>, No. D040917, slip op. at 17-18.)  Petitioner in fact received the lowest possible sentence to which he was exposed.  Thus, Petitioner has not shown prejudice because he has not shown a reasonable probability that he would not have pled guilty and would have insisted on going to trial had counsel provided additional information regarding juvenile development to the sentencing court.  <u>Hill</u>, 474 U.S. at 59.  Thus, the silent denial of this aspect of claim four by the state court was neither contrary to, nor involved an unreasonable application of, clearly established federal law.  <u>Lockyer</u>, 538 U.S. at 75-76; <u>Williams</u>, 529 U.S. at 412; <u>Hill</u>, 474 U.S. at 59; <u>Strickland</u>, 466 U.S. at 687, 691.  Accordingly, habeas relief is **DENIED** as to claim four.

## VI.

## <u>CONCLUSION AND ORDER</u>

Based on the foregoing, **IT IS ORDERED** that Petitioner's Motion for an Evidentiary Hearing is **DENIED** and the First Amended Petition for a Writ of Habeas Corpus is **DENIED**. The Court **ISSUES** a Certificate of Appealability as to all claims presented in the First Amended Petition.

DATED:  September 21, 2010

*William Q. Hayes*

**WILLIAM Q. HAYES**
United States District Judge